**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| WOO J. KIM, on behalf of himself and all others similarly situated,<br><br>　　　　　　Plaintiff,<br>　　vs.<br><br>FBR & CO., RICHARD J. HENDRIX, REENA AGGARWAL, THOMAS J. HYNES JR., RICHARD A. KRAEMER, ALLISON M. LEOPOLD TILLEY, MARK R. PATTERSON, ARTHUR J. REIMERS, and WILLIAM F. STROME<br><br>　　　　　　Defendants. | Civil Case No.:<br><br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND INDIVIDUAL CLAIMS FOR VIOLATION OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Woo J. Kim ("Plaintiff"), on behalf of himself and the proposed Class defined herein, brings this class action suit for violations of Sections 14(a) and 20(a) of the Securities Exchange Act Of 1934. In support of this Class Action Complaint, Plaintiff, by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

**NATURE OF THE ACTION**

1.　　Plaintiff brings this action on behalf of himself and the public stockholders of FBR & Co. ("FBR" or the "Company") against FBR's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for breaches of fiduciary duties, and their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 14a-9 promulgated thereunder ("Rule 14a-9").

2.　　On February 21, 2017, B. Riley Financial, Inc., ("B. Riley") and the Company

announced that they had entered into an Agreement and Plan of Merger ("Merger Agreement") pursuant to which B. Riley will acquire all of the outstanding shares of FBR in an all-stock transaction (the "Proposed Transaction"). If consummated, FBR stockholders will receive 0.671 shares of B. Riley stock for each share of FBR stock that they own ("Exchange Ratio"), with cash paid in lieu of fractional B. Riley common shares. The Proposed Transaction was valued at approximately $160.1 million at the time of the announcement.

3.     On March 17, 2017, defendants issued materially incomplete and misleading disclosures in the Form S-4 Registration Statement (the "Registration Statement") filed with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction. The Registration Statement is deficient and misleading in that it fails to provide adequate disclosure of all material information related to the Proposed Transaction.

4.     Accordingly, Plaintiff alleges herein that Defendants have breached their fiduciary duties and violated Sections 14(a) and 20(a) of the Exchange Act in connection with the filing of the Registration Statement. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, pursuant to 15 U.S.C. § 78aa (federal question jurisdiction), as Plaintiff alleges violations of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

6.     The Court has personal jurisdiction over each of the Defendants because each either is a corporation that is incorporated under the laws of, conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because: (a) one or more of the Defendants either resides in or maintains executive offices here; (b) a substantial portion of the transactions and wrongs complained of herein occurred here; and (c) Defendants

have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect here.

## PARTIES

8.      Plaintiff Woo J. Kim is, and has been at all relevant times, the owner of shares of FBR common stock.

9.      Defendant FBR is a full-service investment banking and institutional brokerage firm with a deep expertise and focus on the equity capital markets. The company is a Virginia corporation and maintains its principal offices at 1300 North Seventeenth Street, Arlington, Virginia, 22209. FBR's common stock is traded on the NASDAQ under the symbol "FBRC."

10.     Defendant Richard J. Hendrix ("Hendrix") is the President and Chief Executive Officer of the Company and the Bank. He has served as a director since 2006 and as the Chairman of the Company's Board of Directors since the first meeting of the Board following the 2012 annual meeting of shareholders.

11.     Defendant Reena Aggarwal ("Aggarwal") has been a director of the Company since March, 2011.

12.     Defendant Thomas J. Hynes Jr. ("Hynes") has been a director of the Company since January, 2007.

13.     Defendant Richard A. Kraemer ("Kraemer") has been a director of the Company since January, 2007.

14.     Defendant Allison M. Leopold Tilley ("Tilley") has been a director of the Company since February, 2016.

15.     Defendant Mark R. Patterson ("Patterson") has been a director of the Company since October, 2015.

16.     Defendant Arthur J. Reimers ("Reimers") has been a director of the Company since January, 2007.

17.     Defendant William F. Strome ("Strome") has been a director of the Company since

3

October, 2014.

18.     Defendants Hendrix, Reimers, Aggarwal, Hynes, Kraemer, Leopold Tilley, Patterson and Strome are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITY

19.     B. Riley is a Delaware corporation. Through its subsidiaries, B. Riley provides collaborative financial services and solutions. B. Riley maintains its principal executive offices at 21255 Burbank Boulevard, Suite 400, Woodland Hills, California, 91367. B. Riley's common stock is traded on the NASDAQ under the symbol "RILY."

## CLASS ACTION ALLEGATIONS

20.     Plaintiff brings this action individually and as a class action on behalf of all holders of FBR stock who are being, and will be, harmed by Defendants' actions described herein (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, controlled by, or affiliated with, any Defendant, including the immediate family members of the Individual Defendant.

21.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

22.     The Class is so numerous that joinder of all members is impracticable. According to the Registration Statement, as of March 13, 2017, FBR had 7,077,682 shares of common stock outstanding. These shares are held by thousands of beneficial holders who are geographically dispersed across the country.

23.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, inter alia, the following:

  (a)     Whether defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

  (b)     Whether the Individual Defendants have violated Section 20(a) of the

4

Exchange Act; and

(c)      Whether Plaintiff and the other members of the Class would suffer irreparable harm were the Proposed Transaction consummated.

24.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

25.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

26.      The prosecution of separate actions by individual members of the Class creates a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants.

27.      Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

28.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class a whole.

29.      Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of himself and the Class to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## FACTUAL BACKGROUND

### Company Background

30.      FBR is a full-service investment banking and institutional brokerage firm with a deep expertise and focus on the equity capital markets. The company provides investment banking, merger and acquisition advisory, institutional brokerage, and research services through its subsidiaries FBR Capital Markets & Co. and MLV & Co. FBR provides capital and financial expertise to middle-market companies in the following industry sectors: consumer; energy &

5

natural resources; financial institutions; healthcare; industrials; insurance; real estate; and technology, media, and telecom.

**The Merger Process**

31. In the latter half of 2016, FBR retained Berkshire Capital Securities LLC ("Berkshire Capital") to act as its financial advisor with an eye towards exploring possible strategic opportunities.

32. To facilitate the process, FBR entered into confidentiality agreements with a number of industry participants, including B. Riley, and engaged in informal discussions about potential strategic opportunities. Additionally, representatives of FBR met with representatives of several industry participants, including B. Riley, and provided financial due diligence information with respect to FBR. The nature and extent of these discussions is largely absent from the Registration Statement, and it is unclear how many industry participants participated in this process.

33. In mid-January 2017, representatives of B. Riley reached out to representatives of FBR regarding the possibility of a strategic combination between B. Riley and FBR.

34. On February 6, 2017, Bryant R. Riley ("Riley"), the Chairman and Chief Executive Officer of B. Riley, sent an informal note outlining B. Riley's interest in a strategic combination with FBR. The note contemplated an acquisition of 100% of the FBR common shares and other equity interests for $140 million, which would consist of $80.5 million of B. Riley common shares and a $59.5 million pre-closing cash dividend.

35. Two days later, Riley sent Hendrix a revised proposal that contemplated an acquisition of 100% of FBR common shares and other equity interests for $148 million, consisting of $90 million of B. Riley common shares and a $58 million pre-closing cash dividend.

36. On February 9, 2017, FBR's board of directors, together with management, reviewed the details of the discussions between representatives of FBR and representatives of B. Riley. During this meeting, FBR's board of directors instructed management, Wachtell Lipton, and Berkshire Capital to continue to engage with representatives of B. Riley and to discuss

6

potential terms of a transaction.

37.     Negotiations and due diligence between the two parties proceeded over the next few days, and on February 14, 2017, FBR's board of directors held a special meeting to review the material terms of the draft merger agreement for the proposed transaction with B. Riley.

38.     The following day, the Board held a special meeting to discuss B. Riley's current proposal.  Topics discussed at this meeting included the draft merger agreement, proposed voting agreements, the potential alternatives that FBR had explored, including  other potential strategic partners identified by Berkshire Capital, financial aspects of the proposed combination transaction with B. Riley, and other financial due diligence. Following this review, the Board directed management and its advisors to move towards finalizing a transaction with B. Riley.

39.     Three days later, on February 17, 2017, the Board held a special meeting to discuss the terms of B. Riley's final proposal. This final proposal, which was an acquisition of FBR for approximately $20.16 per FBR common share (based on the closing price of B. Riley common shares on February 16, 2017 and an estimated exchange ratio of 0.672) consisting of approximately $11.66 of B. Riley common shares based on an exchange ratio fixed at signing and an anticipated pre-closing cash dividend of $8.50 per FBR common share, provided that acceptance of the deal was contingent to Hendrix entering into an employment agreement with B. Riley concurrently with the signing of the other transaction documents. Details pertaining to when negotiations regarding this provision occurred are not included in the Registration Statement.

40.     During this February 17, 2017 meeting, Berkshire Capital rendered its fairness opinion. The Board then approved the Merger Agreement and the Transaction. On February 13, 2017 the Company and B. Riley finalized and executed the Merger Agreement and related documents. However, given (i) the limited "sales process;" (ii) the lack of clarity regarding the other interested industry participants and the confidentiality agreements they were subject to; (iii) that B. Riley's offer only marginally improved and no attempts were made to secure a better offer from B. Riley; and (iv) that the Proposed Transaction was driven by defendant Hendrix, who will become CEO of the combined investment banking and brokerage business, which will be a

subsidiary of B. Riley Financial, it is highly material to FBR shareholders to know whether any of the directors had reservations regarding the Proposed Transaction, or otherwise believed that the Company should remain a stand-alone entity or continue to explore alternative bids. Indeed, by representing that the Board's approval of the Proposed Transaction was "unanimous," without disclosing any substance of the Board's deliberations, Company shareholders are being misled into believing that the Company's current Board either failed to comply with their duties and actively deliberate, or otherwise has no reservations about the Proposed Transaction.

41.     On February 21, 2017, the parties issued a joint press release announcing the merger.

**The Merger Announcement**

42.     In a press release dated February 21, 2017, FBR announced that it had entered into the Merger Agreement with B. Riley pursuant to which B. Riley will acquire all outstanding shares of FBR in a transaction valued at approximately $160.1 million.

43.     The press release states in pertinent part:

**LOS ANGELES, February 21, 2017** – B. Riley Financial, Inc. (NASDAQ: RILY), a diversified financial services company, has signed a stock for stock merger agreement to acquire FBR & Co. ("FBR;" NASDAQ: FBRC), a leading investment banking and brokerage firm, in a transaction valued at $160.1 million based on Friday's closing price of $17.55 for B. Riley Financial's common shares and an anticipated payment of a cash dividend before closing of $8.50 per share.
B. Riley Financial and FBR combined will become a clear leader in small cap investment banking and brokerage in the U.S. with 600 names under research coverage.

Together B. Riley Financial and FBR will provide a truly unique platform to help clients manage their capital and business prospects across all stages of the company's life cycle. The firm's capital raising capabilities will range from formation capital and growth capital to direct lending and recapitalizations, utilizing 144A, ATMs, public market offerings and other creative structures. The firm will also include one of the world's largest asset valuation and disposition businesses, as well as a business that specializes in providing complex restructuring solutions. Each of these capabilities is attached to a market leading practice within B. Riley Financial, giving it a thorough understanding of clients' needs to generate the right solution with world class execution.

"FBR's leadership in investment banking and its sector coverage, combined with minimal overlap on our existing brokerage business, makes this a very powerful combination for our clients," said Bryant Riley, Chairman and CEO of B. Riley Financial. "This merger with FBR represents a great strategic and cultural fit for B. Riley with strong franchises in areas complementary to our existing businesses. The combined firm will enjoy an increased capital base as well as meaningful revenue and expense synergies."

Upon closing, Richard Hendrix, FBR's current Chairman and CEO, will assume the role of CEO of the combined investment banking and brokerage business, which will be a subsidiary of B. Riley Financial.

"Merging with B. Riley creates a market leader in investment banking and brokerage services. We benefit by becoming an important component of a broader and more diversified financial services company led by like-minded and trusted professionals. Together we can scale and strengthen our business," said Hendrix. "Our organizations are fueled by employees who are highly knowledgeable and have an in-depth understanding of their clients and industries. Both organizations benefit from longstanding relationships with investors and deep client ties. We look forward to working with the entire B. Riley team to maximize the value we can deliver to clients and shareholders with this combination."

**Enhanced Capabilities and Market Presence with Limited Overlap**
FBR's banking and brokerage businesses strategically align with B. Riley's current operations with limited overlap of clients, coverage and capital raising activities. The transaction further diversifies the overall business of B. Riley Financial and adds FBR's market leading initial equity franchise to B. Riley & Co.'s successful capital markets capabilities. In addition, the combination allows for expanded geographic distribution reach with significant operations on the East and West coasts.

"FBR's strong market share in IPOs and 144As, and sector coverage in key banking sectors, complement our business. Bringing together the breadth and depth of capabilities of B. Riley and FBR supports our investments in strategic businesses and growing areas of our firm like our restructuring, asset disposition, appraisal business and lending fund," added Riley.

**Transaction Value and Closing Details**
At closing, FBR shareholders will receive .671 shares of B. Riley common stock and an anticipated pre-closing cash dividend of $8.50 per share assuming sufficient funds are available for distribution. FBR is required to deliver a minimum of $33.5 million of cash (net of certain transactional and other expenses) to B. Riley Financial at closing. Based upon B. Riley Financial's closing stock price on Friday, the stock and anticipated pre-closing dividend amounts to $20.28 per FBR share.

The transaction has been approved by B. Riley Financial's and FBR's boards of directors and is subject to regulatory and shareholder approval from both companies and the satisfaction of other customary closing conditions. B. Riley and FBR directors and officers, representing 28 percent and 19 percent respectively, have agreed to vote their shares in favor of the merger. The transaction is expected to close during the second quarter of this year.

Sullivan & Cromwell LLP served as legal counsel to B. Riley Financial. Wachtell, Lipton, Rosen & Katz served as legal counsel to FBR

44.     As noted in both the press release and Merger Agreement, FBR stockholders will have the right to receive, in exchange for each share of FBR common stock, .671 shares of B. Riley common stock and an anticipated pre-closing cash dividend of $8.50 per share.

**The Materially Incomplete and Misleading Registration Statement**

45.     Defendants filed, or caused to be filed, the Registration Statement with the SEC in connection with the Proposed Transaction. As alleged herein, the Registration Statement omits material information that must be disclosed to FBR's stockholders to enable them to render an informed decision with respect to the Proposed Transaction.

46.     As discussed below, the Registration Statements omits material information regarding (i) the sale process leading up to the Proposed Transaction; (ii) Hendrix's potential conflicts of interest; (iii) Berkshire Capital's potential conflicts of interest; (iv) the valuation analyses prepared by Berkshire Capital in connection with the rendering of its fairness opinion; and (v) FBR management's projections, utilized by Berkshire Capital in its financial analyses.

47.     With regard to the omission of material information relating to the sale process leading up to the Proposed Transaction, the Registration Statement states at page 53 that the Company entered into confidentiality agreements with a number of industry participants to discuss various potential strategic opportunities. However, the Registration Statement fails to disclose the details of FBR's discussions with these industry participants, including whether any of the industry participants submitted an indication of interest to acquire FBR and the terms thereof. Furthermore, the Registration Statement fails to disclose the details of FBR's discussions with the industry participants, including whether any of the industry participants submitted an indication of interest

to acquire FBR. Furthermore, details regarding the nature of the confidentiality agreements are worryingly absent from the Registration Statement.

48.     Specifically, it is unclear whether the confidentiality agreements contained "standstill" provisions or "don't-ask-don't-waive" provisions that are currently operating to preclude these industry participants from making a topping bid to acquire the Company or seek a waiver of the standstill terms. Without this information, the Company's stockholders are being misled into assuming that these industry participants, which were actively interested in acquiring the Company, could make an offer to acquire the Company if they so choose – when it is likely that they are actually precluded from doing so.

49.     The likelihood of these industry participants being currently precluded by a "don't-ask-don't-waive" standstill from making a topping bid for the Company is corroborated by Section 6.2(i) of the Merger Agreement, which forbids FBR from waiving any standstill agreements, unless the FBR Board were to find that it would be a breach of fiduciary duty for it to fail to waive it. Such a provision would serve no purpose unless FBR had entered into a standstill agreement with other interested parties that served to preclude them from making a topping bid for the Company.

50.     With regard to the potential conflicts of interest faced by FBR management, the Registration Statement fails to disclose the timing and nature of all communications regarding future employment of FBR's CEO, including who participated in all such communications. The Registration Statement states at page 75 that in connection with FBR's entry into the merger agreement, B. Riley and Defendant Hendrix entered into an agreement for continued employment following the consummation of the Merger that will see Defendant Hendrix serve on the B. Riley board of directors and assume the role of CEO of the combined investment banking and brokerage business. This agreement, amongst other things, provides for salary, incentive bonuses, and retention bonuses. Accordingly, Hendrix stands to benefit significantly following the consummation of the Merger. However, details regarding when B. Riley first expressed interest in retaining Defendant Hendrix are absent from the Registration Statement.

51.     Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

52.     With regard to the potential conflicts of interest faced by Berkshire Capital, the Registration Statement fails to disclose material information concerning the potential conflicts of interest faced by Berkshire Capital as the Company's financial advisor. The Registration Statement details on page 70 the fee that Berkshire Capital will receive in connection with Berkshire Capital's role as financial advisor to FBR, and the compensation paid to Berkshire Capital by FBR over the past two years as well as the nature of the services provided. However, the Registration Statement fails to disclose material information concerning Berkshire Capital's prior relationship B. Riley.

53.     As a result of the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives, full disclosure of investment banker compensation and all potential conflicts is required. Despite this requirement, the Registration Statement fails to detail whether Berkshire has provided any services to B. Riley or its affiliates in the past two years.

54.     As detailed above, the Registration Statement omits material information with respect to the process and events leading up to the Proposed Transaction, including material information concerning significant conflicts of interest affecting Berkshire Capital, material information concerning significant conflicts of interest affecting FBR's CEO, Hendrix, and material information regarding the circumstances of other interested industry participants and the confidentiality agreements they were subjected to. As detailed below, the Registration Statement also fails to disclose critical information concerning each parties' managements' projections, as utilized by Berkshire Capital in its financial analyses, and the opinions and analysis of FBR's financial advisors, Berkshire Capital, on which the Board purportedly relied. All this omitted information, if disclosed, would significantly alter the total mix of information available to FBR's

stockholders that they would rely upon in deciding how to vote on the Proposed Transaction.

55.     Specifically, the Recommendation Statement fails to disclose material information regarding the financial analyses performed by the Company's financial advisors, Berkshire Capital, in support of its so-called fairness opinions.

56.     With respect to Berkshire Capital's *Guideline Public Companies Analysis*, the Recommendation Statement fails to disclose the individual multiples and financial metrics for the companies observed by Berkshire Capital in its analysis.

57.     With respect to Berkshire Capital's *Analysis of Precedent Transactions*, the Recommendation Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Berkshire Capital in its analysis.

58.     Additionally, the Registration Statement also fails to disclose material information concerning the Company's financial projections. Specifically, the financial projections for FBR contained within the Registration Statement are limited to 2017, and no explanation is provided as to why the Registration Statement fails to disclose any projections for FBR beyond the fiscal year ended December 31, 2017. Moreover, with regard to total assets and tangible book value, the Recommendation Statement fails to disclose projections beyond the first-quarter of 2017. The Registration Statement fails to disclose why the Board failed to ask Berkshire Capital to make reasonable extrapolations beyond 2017 in connection with its valuation of FBR.

59.     Finally, while some financial projections for FBR are contained within the Registration Statement, the same cannot be said of B. Riley's financial projections that Berkshire relied upon in preparing its fairness opinion. The Registration Statement notes on page 60 that Berkshire Capital reviewed certain internal financial and operating information with respect to the past and current business, operations, financial condition and prospects of B. Riley furnished to or discussed with Berkshire Capital by the management of B. Riley, including certain financial forecasts relating to B. Riley prepared by the management of B. Riley. However none of this information is disclosed. Despite the fact that Berkshire Capital relied on the B. Riley forecasts in its valuation analyses, including in its *Contribution Analysis*, *Guideline Companies Analysis* and

13

*Pro Forma Earnings Per Share and Tangible Book Value Per Share Analysis*, the Registration Statement fails to disclose any details with respect to the B. Riley's internal financial and operating information.

60.     Based on the foregoing, FBR's public shareholders lack critical information necessary to evaluate whether the Proposed Transaction truly maximizes shareholder value and serves their interests. Moreover, without the key financial information and related disclosures, FBR's public shareholders cannot gauge the accuracy and reliability of the financial analyses performed by Berkshire Capital, and whether they can reasonably rely on this fairness opinion.

61.     Accordingly, Plaintiff seeks, among other things, the following relief: (i) enjoinment of the Proposed Transaction; or (ii) rescission of the Proposed Transaction in the event that it is consummated and to recover damages resulting from Defendants' misconduct.

**FIRST CAUSE OF ACTION**
**Against All Defendants for Violations of Section 14(a) of the Exchange Act**
**and Rule 14a-9 Promulgated Thereunder**

62.     Plaintiff repeats and realleges each allegation set forth herein.

63.     As detailed herein, Defendants disseminated the false and misleading Registration Statement specified above, which contained statements which, at the time and in the light of the circumstances under which they were made, were false and misleading with respect to material facts and which omitted to state material facts necessary in order to make the statements therein not false or misleading or necessary to correct earlier statements which had become false or misleading, in violation of Section 14(a) of the Exchange Act and SEC Rules promulgated thereunder, including SEC Rule 14a-9.

64.     By the use of the mails and by means and instrumentalities of interstate commerce and the facility of a national securities exchange, Defendants solicited and permitted the use of their names to solicit proxies or consents or authorizations in respect of the common stock of FBR.

65.     By virtue of their positions within the Company, the Individual Defendants were aware of this information and of their duty to disclose this information in the Registration

14

Statement. The Registration Statement was prepared, reviewed, and/or disseminated by

Defendants. The Registration Statement misrepresented and omitted material facts, including

material information about the unfair sale process for the Company, the unfair consideration

offered in the Proposed Transaction, and the actual intrinsic value of the Company's assets.

Defendants were at least negligent in filing and disseminating the Registration Statement with

these materially false and misleading statements and omissions. Defendants have also failed to

correct the Registration Statement and the failure to update and correct false statements is also a

violation of Section 14 of the Exchange Act and SEC Rules promulgated thereunder.

66.    The omissions and false and misleading statements in the Registration Statement

are material in that a reasonable stockholder would consider them important in deciding whether

to vote in favor of and tender their shares in the Proposed Transaction. A reasonable investor

would view a full and accurate disclosure as significantly altering the "total mix" of information

made available in the Registration Statement and in other information reasonably available to

stockholders.

67.    Plaintiff has no adequate remedy at law. Only through the exercise of this Court's

equitable powers can Plaintiff be fully protected from immediate and irreparable injury, which

defendants' actions threaten to inflict.

## SECOND CAUSE OF ACTION
### Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act

68.    Plaintiff repeats and realleges each allegation set forth herein.

69.    The Individual Defendants acted as controlling persons of FBR within the

meaning of Section 20(a) of the Exchange Act, as alleged herein. By virtue of their positions as

officers and directors of FBR and their participation in and awareness of the Company's business

and operations and their intimate knowledge of the materially false statements and omissions

contained in the Registration Statement filed with the SEC, they had the power to influence and

control and did influence and control, directly or indirectly, the decision-making of the

Company, including the content and dissemination of the various statements that Plaintiff

contends are false and misleading.

70.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be false and misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

71.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. Among other things, the Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, they were directly involved in the making of that document.

72.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered – descriptions which had input from the Individual Defendants.

73.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

74.     Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in Plaintiff's favor and in favor of the Class and against Defendants as follows:

A.     Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as a representative of the Class, and appointing his counsel as class counsel;

B.      Enjoining Defendants, their agents, counsel, employees, and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company adopts and implements a procedure or process to obtain the best available terms for shareholders;

C.      Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D.      Directing the Individual Defendants to account to Plaintiff and the Class for all damages suffered as a result of the wrongdoing;

E.      Awarding Plaintiff and the Class the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

F.      Granting such other and further equitable relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Dated:  April 12, 2017                    **LEVI & KORSINSKY LLP**

By:  _/s/ Elizabeth K. Tripodi_
Elizabeth K. Tripodi (VA Bar No. 73483)
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email: etripodi@zlk.com

*Attorney for Plaintiff and the Proposed Class*

/s/ _Elizabeth K. Tripodi_